| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO  80202 | DATE FILED: June 26, 2019 9:52 AM<br>FILING ID: 1C068432B5518<br>CASE NUMBER: 2019CV32464 |
| _____<br><br>Harold Nachtrieb,<br><br>     **Plaintiff**<br><br>v.<br><br>KEY BANK NATIONAL ASSOCIATION d/b/a KEY PRIVATE BANK, an Ohio corporation<br><br>     **Defendant** | **COURT USE ONLY**<br>_____<br><br>Case No._____<br><br>Division:  ___ |
| John A. Culver, Esq., #21811<br>Seth J. Benezra, Esq., #13144<br>Anna C. Fullerton, Esq., #53490<br>Benezra & Culver, P.C.<br>633 17th Street, Suite 1450<br>Denver, CO  80202<br>(303) 716-0254<br>(303) 716-0327 fax<br>jaculver@bc-law.com; sjbenezra@bc-law.com; acfullerton@bc-law.com | |
| **PLAINTIFF HAROLD NACHTRIEB'S COMPLAINT AND JURY DEMAND** | |

Plaintiff, Harold Nachtrieb, for his Complaint and Jury Demand, alleges the following:

## I.    INTRODUCTION

1.     This case arises from the illegal and retaliatory discharge of Harold Nachtrieb from his employment with Key Private Bank ("KPB") because he lodged complaints of illegal and unethical conduct against KPB management. Mr. Nachtrieb was also discriminated against on the basis of his age.  In his Complaint, Mr. Nachtrieb alleges claims for wrongful discharge in violation of public policy, breach of contract, and violation of the Colorado Anti-Discrimination Act ("CADA").

## II.    JURISDICTION AND VENUE

2     Jurisdiction is proper in this Court pursuant to the Colorado Constitution Article VI, Section 9.

Exhibit 1

3.      Venue is proper under Rule 98(c)(1) of the Colorado Rules of Civil Procedure, because Defendant KPB  does business in the City and County of Denver, Colorado.  Additionally, the events that give rise to this Complaint occurred primarily in Denver.

## III.     PARTIES

4.      At all times relevant to this Complaint, Harold Nachtrieb resided in the City and County of Denver, Colorado.  He was employed at the Cherry Creek branch of KPB in the City and County of Denver, Colorado.

5.      Key Bank National Association is a private corporation, which does business as Key Private Bank ("KPB").  It is incorporated in Ohio.  It has branches throughout the United States, including in the City and County of Denver, Colorado.

## IV     FACTUAL BACKGROUND

### A.     <u>Mr. Nachtrieb's Exemplary Performance.</u>

6.      Mr. Nachtrieb turned 57 years of age on August 31, 2018, and has over 25 years of securities and wealth management experience with special expertise in client retention and prospect development.  He is also a Chartered Financial Analyst ("CFA").  Prior to the events at issue in this case, Mr. Nachtrieb ran his own investment advisory company, and was the Chief Investment Officer for the City of Los Angeles overseeing $7 billion in operating funds.

7.      In February of 2015, Mr. Nachtrieb was hired by KPB to serve as the Vice President, Portfolio Manager ("PM") for Colorado, in its Wealth Management Group.  Throughout his tenure, his performance was exemplary.

8.      In 2015, Mr. Nachtrieb helped to successfully transition approximately $400 million of client assets following the departure of another Colorado PM.  Following the departure of an Idaho PM, Mr. Nachtrieb agreed to take over those accounts as well.  Mr. Nachtrieb was crucial to maintaining client relationships, and accounts during a turbulent time.  In April 2015, he received a letter of commendation and an email from KPB President, Terry Jenkins, recognizing his successes at KPB.

9.      As a result of his efforts in Idaho, Mr. Nachtrieb helped KPB retain a $55 million account in 2015.  In May of 2015, Mr. Nachtrieb was offered the PM position in Idaho which he declined.  Further, in July of 2015, based on his successes in Idaho and Colorado, Mr. Nachtrieb was given a $25,000 salary increase in exchange for taking over management of accounts in Utah, Colorado, and Idaho.  In February of 2016, Mr. Nachtrieb received a $35,000 incentive bonus.

**B.    KPB's Open Door Policy.**

10.    When he commenced his employment with KPB, Mr. Nachtrieb received a number of policies, including KPB's Code of Ethics and its Open Door Code.  When he received those policies, Mr. Nachtrieb read and understood the policies.

11.    KPB's Code of Ethics contains a promise of "non-retaliation."  Code of Ethics, p. 9, attached as Exhibit A.  Specifically, the policy provides that:

> You are encouraged to speak up if you suspect any unethical activity or behavior at Key.  If you speak up, we will not permit any retaliation against you for reporting suspicious activity in good faith and you will not be subject to disciplinary action.

*Id.*

12.    KPB's Open Door Policy contains a similar promise of non-retaliation.  In that policy, employees are encouraged to raise issues of concern with management, both informally and formally.  Open Door Policy, pp. 1-2, attached as Exhibit B.  That policy contains a promise of "non-retaliation" which specifically provides that:

> Key is committed to resolving legitimate employee disputes quickly and reasonably.  Key forbids any retaliation against any employee, who, in good faith, pursues resolution of an employee dispute under this policy.

*Id.*. p. 2.

13.    Mr. Nachtrieb understood these policies to be commitments by KPB not to retaliate against him when he raised matters involving potentially unethical behavior to management.   In reliance on those promises, he felt comfortable raising such issues with management.

**C.    Mr. Nachtrieb was Retaliated Against for Making a Claim Under the False Claims Act ("FCA").**

14.    In approximately April of 2016, KPB employees learned that Mr. Nachtrieb had brought an action for violation of the False Claims Act ("FCA") against his former employer, the City of Los Angeles. Management then retaliated against him for that protected activity by diverting account opportunities to Mr. Nachtrieb's peer.  Mr. Nachtrieb was also yelled at and intimidated by his supervisors. In mid-2016, Mr. Nachtrieb received his first unsatisfactory performance review.   That review was inconsistent with Mr. Nachtrieb's actual performance.

15.    On September 20, 2016, Mr. Nachtrieb's former attorney sent a letter to KPB. Mr. Nachtrieb understood that this letter constituted a protected complaint under

the KPB Policy.  In that letter, Mr. Nachtrieb's counsel insisted that KPB end its retaliation against Mr. Nachtrieb for his participation in an FCA lawsuit.

**D.    Mr. Lindquist Treated Older Employees Less Favorably Than Younger Employees, and Targeted Mr. Nachtrieb based on his FCA lawsuit.**

16.    In October of 2016, Jon Eric Lindquist joined KPB as the Market Manager who supervised all of the Colorado PMs, including Mr. Nachtrieb.  Soon after he was hired, Mr. Lindquist met with KPB attorneys about Mr. Nachtrieb's retaliation complaint.  Within days, before having the opportunity to observe Mr. Nachtrieb's performance, Mr. Lindquist began to unfairly criticized Mr. Nachtrieb's performance.

17.    Additionally, soon after he joined KPB, Mr. Lindquist was required to hire almost an entirely new staff because of high turnover. At that time, Mr. Lindquist only supervised three employees over the age of 50, including Mr. Nachtrieb.  The new hires brought on by Mr. Lindquist were significantly younger than the other employees.  Mr. Lindquist treated the remaining older employees less favorably than the younger new hires.   He avoided in person conversations with them, diverted all opportunities and new accounts away from them, and was hypercritical of their performance.

**E.    Mr. Nachtrieb Reported Violations of State and Federal Law and the CFA Institute Code of Ethics and Standards of Conduct ("CFA Code")**

18.    Beginning in January of 2017, Mr. Nachtrieb repeatedly complained that statements mailed to clients by KPB were knowingly false, because KPB misrepresented which employees worked on the clients' accounts.  In order to mask its high employee turnover, the statements stated that individuals who no longer worked for KPB were working on client accounts.  Mr. Nachtrieb informed Mr. Lindquist, Ellen Stanley, the Senior Vice President ("SVP") of Human Resources ("HR") and others that this practice violated KPB policy and the law.

19.    The professional ethical rules to which Mr. Nachtrieb is bound by as a CFA, are issued by the CFA Institute and are referred to as the CFA Standards ("the Standards").  The Standards are designed to protect the public. Among other things, the Standards state that "Members and Candidates must not knowingly make any misrepresentations relating to . . . professional activities[,]" and "Members and Candidates must not engage in any professional conduct involving dishonesty, fraud, or deceit[.]" CFA Standards, Section I(C)-(D), page 1, attached as Exhibit C.

20.    In discussions with KPB Management, Mr. Nachtrieb explained that the misstatements to clients violated federal and state law and implicitly the Standards.  Moreover, the Standards require Mr. Nachtrieb to raise those matters to his managers.

21.    Because KPB refused to fix the statements, Mr. Nachtrieb continued to raise this issue.

F.    **Mr. Lindquist Further Retaliates.**

22.    Soon after he surfaced these complaints, Mr. Lindquist began retaliatinng against Mr. Nachtrieb.  Although Mr. Nachtrieb had exceptional performance in 2016, in his annual 2016 performance review, which he received on or about March 6, 2017, Mr. Lindquist rated Mr. Nachtrieb a 2 out of 5 or "unsatisfactory".

23.    Mr. Nachtrieb's 2017 performance was highly successful.  In 2017, Mr. Nachtrieb was actually a top producing PM and ranked eighth on the PM Scorecard out of 50 KPB PMs nationwide and number one in the Rocky Mountain region based on new revenue.  In 2017, Mr. Nachtrieb also helped grow a $5 million Utah account into a $65 million dollar account in 2017 generating over $400,000 in new fee income.

24.    Nonetheless, in August of 2017, KPB reassigned about $40 million of Mr. Nachtrieb's Colorado accounts to a brand-new hire, Robert  Matt Headland.  Mr. Headland is just 47 years old and is significantly less experienced and credentialed than Mr. Nachtrieb.  After Mr. Headland was hired, Mr. Lindquist funneled all new business to him including a $30 million prospect.  This practice repeatedly denied Mr. Nachtrieb opportunities for growth.  Mr. Lindquist was also increasingly hostile and negative toward Mr. Nachtrieb.

25.    In Mr. Nachtrieb's 2017 mid-year review, delivered to him on or about August 29, 2017, Mr. Lindquist again ranked Mr. Nachtrieb a 2 out of 5 or "unsatisfactory".  In that review, Mr. Lindquist criticized Mr. Nachtrieb for making protected disclosures of wrongdoing, including KPB's misrepresentations in client statements.

G.    **Mr. Nachtrieb Protested the Retaliatory Performance Review.**

26.    On August 31, 2017, Mr. Nachtrieb spoke with Mr. Lindquist about his 2017 mid-year review and told him that it was was erroneous, and retaliatory.  He discussed how Mr. Lindquist was penalizing him for speaking out against the use of misleading client statements.

27.    In a September 5, 2017, email, Mr. Nachtrieb complained to Mr. Lindquist that the review was retaliatory because he had been criticized for making protected Open Door complaints.

28.    On September 17, 2017, Mr. Nachtrieb filed a formal Open Door Complaint alleging, among other things, that his latest review was retaliatory.

H.    **Mr. Nachtrieb's Protected Complaint Regarding Account Privacy.**

29.    On December 26, 2017, Mr. Nachtrieb refused to follow Mr. Lindquist's improper request that he violate company policy, and federal and state law, by granting Lisa Davis, KPB's Senior Financial Planner,  access to a private drive containing non-

public information about a client account.  In response, Mr. Lindquist accused Mr. Nachtrieb of insubordination.  Later, the Privacy Group confirmed that Mr. Lindquist did not have authority to access these files, or grant other employee's access to these files. Despite that fact, Mr. Lindquist later allowed Ms. Davis to access these private files. In January of 2018, Mr. Nachtrieb alerted Mike Ervin, a KPB Compliance Analyst, about Mr. Lindquist's privacy breach.

30.     Mr. Lindquist permitted this breach of privacy, because he believed that it would assist promote KPB marketing and solicitation objectives, and boost department revenue and incentive pay.  Mr. Nachtrieb protested these violations because under the CFA Code he must always "[p]lace the integrity of the investment profession and the interests of clients above [his] own personal interests."  Ex. C, Standards, p. 1.

### H.     Mr. Nachtrieb's Protected Complaints Regarding A Conflict of Interest.

31.     After KPB made changes to the PM incentive plan, Mr. Nachtrieb met with Mr. Lindquist on January 5, 2018, and reported that the new plan created a conflict of interest between KPB PMs and clients and therefore violated the CFA Standards and federal and state law.  During the meeting with Mr. Lindquist about Mr. Nachtrieb's concerns, Mr. Lindquist criticized Mr. Nachtrieb for refusing to grant access to the private drive.

32.     On January 11, 2018, Mr. Nachtrieb again complained to Mr. Lindquist that the 2018 PM incentive plan violated the CFA Standards, as well as federal and state law.  Mr. Lindquist dismissed his concerns and took no action.

### I.     KPB Continued to Retaliate Against Mr. Nachtrieb and Discriminated Against Him Based on His Age.

33.     On January 17, 2018, KPB responded to Mr. Nachtrieb's September 2017 Open Door complaint.  Recognizing that he was reviewed unfairly by Mr. Lindquist, his review was changed from a 2 out of 5, to a 3 out of 5 or "satisfactory" by Thomas Tulodzieski, Regional Sales Executive, and Lori Seabon, Senior Lead Employee Relations Consultant.  KPB, however, did not take any action regarding the remainder of his complaints, and criticized him for "belaboring" the issue of misstatements to clients.

34.     On January 19, 2018, Mr. Lindquist again chastised Mr. Nachtrieb for continuing to raise the issue of misrepresentations by KPB.

35.     Soon thereafter, Lisa Douglas, KPB's trust officer, removed Mr. Nachtrieb from an approximately $5 million trust account after the client passed away.  The remaindermen of the trust were the grandchildren of the client, and despite the policy that accounts stay with the same PM, Ms. Douglas said a "younger PM would be better suited to manage the account." She then gave the account to Mr. Headland.

36.     On February 2, 2018, Mr. Nachtrieb appealed KPB's determination that he was only entitled to a 1-point increase on his mid-year performance review, and asked that his other concerns be addressed, including his concern about misstatements to clients.

## K.     Mr. Nachtrieb Filed His Final Open Door Complaint.

37.     Mr. Nachtrieb filed a new Open Door complaint on January 31, 2018, and reported several new concerns.  First, he reported that Mr. Lindquist breached privacy laws by giving Lisa Davis confidential information about a client account on the private drive.  He also reported that Mr. Lindquist retaliated against Mr. Nachtrieb for refusing to grant Ms. Davis access.  Second, he reported that the new PM incentive plan violated federal and state law.  Third, he reported that employees breached privacy regulations when Ms. Douglas met with beneficiaries of a deceased client's account, including non-interested parties who are not named in the governing documents.  Fourth, he reported that after years of working on a deceased client's account, it was improperly taken away from him and given to Mr. Headland. Fifth, he reported that a new $30 million account opportunity was taken from Mr. Nachtrieb and given to Mr. Headland over Mr. Nachtrieb in retaliation for his prior complaints.

## L.     KPB Terminated Mr. Nachtrieb for Pretextual Reasons.

38.     Just two weeks later, on February 9, 2018, Mr. Lindquist fired Mr. Nachtrieb as part of a "layoff" of one.  Mr. Lindquist asserted that he had decided to fire Mr. Nachtrieb because he only needed one PM in Colorado. This decision was blatantly retaliatory.  After all, at the time of his "layoff", Mr. Nachtrieb's production performance was rated 8 out of roughly 50 PMs.  Mr. Nachtrieb managed $200,000,000 in assets, $80,000,000 of which were custodial in Colorado.  As such, he managed far more assets than Matt Headland, who was retained.

39.     In this context, Mr. Nachtrieb was told that Mr. Headland was retained because he managed more assets in Colorado than Mr. Nachtrieb.  In reality, around the time of his termination, Mr. Nachtrieb actually managed roughly $30 million more in assets than Mr. Headland.  Additionally, the majority of assets that Mr. Headland did manage were individual accounts taken from Mr. Nachtrieb and given to Mr. Headland.

## V.     CLAIMS FOR RELIEIF

## FIRST CLAIM FOR RELIEF
## Wrongful Discharge in Violation of Public Policy

40.     Plaintiff hereby incorporates Paragraphs 1 through 39 as though fully alleged herein.

41.     Plaintiff Nachtrieb was directed to perform an illegal or unethical act as part of his work-related duties and Mr. Nachtrieb opposed matters that he reasonably believed were illegal or unethical.

42.     The actions directed by his employer and about which he complained would have violated a statute, ethical code, or other clearly expressed public policy.

43.     Mr. Nachtrieb was terminated as a result of refusing to perform an illegal act or opposing such unethical or illegal acts.

44.     Defendant was aware or should have been aware that Mr. Nachtrieb's refusal and complaints was based on his reasonable belief that the acts were illegal or unethical or otherwise protected by public policy.

45.     As a result of Defendant's decision to fire Mr. Nachtrieb, he has been damaged.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

46.     Plaintiff hereby incorporates Paragraphs 1 through 45 as though fully alleged herein.

47**.**    KPB's Code of Ethics and Open Door Policy constitute a contract between Defendant and Mr. Nachtrieb.  By those policies, Plaintiff Nachtrieb was promised that he would not be retaliated against for raising ethical issues with Management.

48**.**    Plaintiff Nachtrieb accepted that contract by accepting and continuing his employment with Defendant.

49**.**    Defendants breached Plaintiff Nachtrieb's contract by retaliating against

him for raising ethical concerns.

50.     As a result of Defendant's breaches, Mr. Nachtrieb has suffered damages.

51**.**    Defendant's breach was willful and wanton.

## THIRD CLAIM FOR RELIEF
### Age Discrimination in Violation of the Colorado Anti-Discrimination Act ("CADA").

52.     Plaintiff Nachtrieb hereby incorporates Paragraphs 1 through 51 as though fully alleged herein.

53.     Plaintiff is a member of a class protected by the CADA, in that at the time of the adverse actions taken against him, he was over the age of forty.

54.     Defendant discriminated against Plaintiff on the basis of his age, and caused him severe injuries, damages, and losses. His age was the but/for cause of his termination.

55.     Defendant's conduct was the proximate cause of Plaintiff's injuries, damages, and losses.

WHEREFORE, Plaintiff Nachtrieb respectfully requests that this Court enter judgment in his favor and against Defendant and grant him the following:

a.     Damages in such an amount as will be proved at trial for lost wages and other lost employment opportunities, lost benefits, lost bonuses, lost stock purchase opportunities, lost appreciation from stock, lost dividends from stocks, and loss of promotions.

b.     Compensatory damages, including for emotional distress, as allowed by law.

c.     Attorneys' fees and costs as provided for by law and by this Court.

d.     Pre-and post-judgment interest, costs, and expert witness fees; and,

e.     Such other relief as the Court deems just and proper.[1]

**PLAINTIFF NACHTRIEB DEMANDS A TRIAL BY JURY ON ISSUES TO TRIABLE**

Dated this 26th day of June, 2019.

---

[1]   Pursuant to C.R.S. § 13-21-102 (1.5)(e), Plaintiff will amend his claims for relief to include specific demand for punitive and exemplary damages on those claims as allowed by law.

**BENEZRA & CULVER, P.C.**

*s/ John A. Culver*

John A. Culver, No. 21811
Seth J. Benezra, No. 13144
Anna C. Fullerton, No. 53490
Colorado Plaza Tower #1
633 17th Street, Suite 1450
Denver, CO 80202
Telephone: (303) 716-0254
Facsimile: (303) 716-0327
sjbenezra@bc-law.com
jaculver@bc-law.com
acfullerton@bc-law.com

Plaintiff's Address:
Harold "Hal" Nachtrieb
2267 S. Loveland St.
Lakewood, CO

# EXHIBIT A, part 1

**KeyCorp** 2017 Code of Ethics





Be the red Key.



A message from Beth Mooney ........................................... 3

**Part 1: Introduction** ........................................... **4**

Employee promise ........................................... 5

We live the Key values ........................................... 6

We speak up and report concerns ........................................... 7

Where to seek help ........................................... 8

Offenses and other concerns ........................................... 10

**Part 2: Living our values through the Code** ........................................... **11**

We take ethics seriously ........................................... 12

We respect the Code ........................................... 13

Administration of the Code ........................................... 14

**Part 3: KeyCorp Code of Ethics** ........................................... **15**

We follow the law ........................................... 16

Top three employee ethics concerns ........................................... 17

We recognize and avoid conflicts of interest ........................................... 18

Gifts ........................................... 18

Entertainment ........................................... 20

Out-of-town events ........................................... 20

Providing entertainment ........................................... 21

Bequests ........................................... 21

Outside employment and business activities ........................................... 21

Second jobs ........................................... 22

Real estate license ........................................... 22

Holding office/appointments ........................................... 23

Non-profit organization roles ........................................... 24

For-profit organization roles ........................................... 24

Fiduciary appointments ........................................... 24

Personal finances and opportunities ........................................... 25

Loans ........................................... 25

Trading in stock ........................................... 26

Trading in KeyCorp stock ........................................... 26

Trading in the securities of KeyCorp clients or third parties ........................................... 26

Personal business interests ........................................... 27

Doing business with third parties ........................................... 27

A message from Bill Hartmann ........................................... 28

We conduct business ethically ........................................... 29

We follow all government requirements ........................................... 31

We safeguard our clients' and Key's assets ........................................... 33

**Index of topics** ........................................... **35**

KeyCorp's Board of Directors adopted this Code as of July 12, 2017.
This Code of Ethics supersedes and replaces all previously published KeyCorp Code of Ethics including the Code adopted on July 13, 2016.

Be the red Key.



"At Key, our purpose is to help our clients and our communities thrive. And our Code of Ethics is core to how we think about fulfilling that purpose, because we all have a responsibility to make good choices and to act according to the highest professional and ethical standards in everything we do."

Beth Mooney, Chairman of the Board and CEO, KeyCorp

 Click here to listen to a message from Beth Mooney.

Nothing in the Code will be construed to limit an employee's right to respond accurately and fully to any question, inquiry or request for information when required by legal process or from initiating communications directly with, or responding to any inquiry from, or providing testimony before, any self-regulatory organization or state or federal regulatory authority. Employees are not required to contact Key regarding the subject matter or any such communications before they engage in such communications.

The Code is not intended to, should not be interpreted as, and will not be enforced, to discourage, prohibit or interfere with any employee's rights under federal or state laws, including rights under any whistleblower protections under federal or state law and rights under the National Labor Relations Act, such as discussion regarding wages, hours and other terms and conditions of employment and other protected, concerned activity.

Be the red Key.



# Part 1: Introduction

**KeyCorp** 2017 Code of Ethics

Be the red Key.

# We are Key.

## Employee promise

Our Employee Promise defines who we are as a company. It describes the partnership between you and Key and how together we will create an environment where you, our clients, and our communities thrive. We do this by helping our clients make confident financial decisions by providing smart solutions and great service. In return, Key is a place where you can build your career.

## Professional conduct

In addition to our Employee Promise, we also have a responsibility to act according to the highest professional and ethical standards. As a Key employee, your conduct must be above reproach. The Key Code of Ethics ("the Code") is your first resource for guidance when making decisions in the course of your duties.

Don't know? Aren't sure? Refer to this guide, or contact your Code of Ethics Officer.

## Our employee promise:



We have
a strong sense
of community.

We have the
opportunity for
personal growth.

We do work
that matters.

We are
accountable,
and our results
are rewarded.

Be the red Key.

# We live the Key Values.

Key's values are the principles we stand for as individuals and as a company. They serve as the foundation for our relationship strategy and play a vital role in defining and guiding decision making. Look for how we live these values throughout this guide.

## 1 Teamwork

**We work together to achieve shared objectives.**

Key aspires to be the best regional bank in the U.S. We'll do this by building client relationships, giving great service, and caring about our employees.

## 2 Respect

**We value the unique talents, skills, and experience that diversity provides.**

We know that inclusion, diversity, and respect create powerful outcomes. They improve business performance, help us understand our customers, drive important investments in people, and make our communities stronger through job creation and economic development.

## 3 Accountability

**We deliver on what we promise.**

Each of us is accountable for operating with the highest degree of integrity and we expect the same from everyone with whom we do business. Our ethical standards support Key's relationship strategy and our ability to provide our clients with smart solutions and great service.

## 4 Integrity

**We are open and honest in everything we do.**

As Key employees we protect Key's reputation by always demonstrating the highest level of professionalism and ethical conduct.

## 5 Leadership

**We anticipate the need to act and inspire others to follow.**

At Key, every employee leads. We consistently demonstrate behaviors that reflect our values, promote an ethical work environment, show respect for others, and drive solid business results.

Be the red Key.

# We speak up and report concerns.

**Living by our values means that we keep the best interests of Key in mind. It means that we follow and practice the policies and procedures of our company, obey the law, and take action when we suspect or observe a problem.**

As a Key employee or member of Key's Board of Directors, you are obligated to both comply with the Code and to speak up when you suspect or witness a potential violation of the Code. Failure to report violations may lead to disciplinary action, including termination of your employment and legal action.

So when something doesn't seem right, you are responsible – and accountable – to speak up.

## If something just doesn't feel right, ask yourself:



**1.** Would the action or situation negatively affect Key's reputation?



**2.** If publicized, would it look bad in the media?



**3.** Is the action or situation a violation of the Code, a policy, procedure, regulation or law?



**4.** Could the action or situation evolve into a potentially worse situation?

If your answer is "maybe" or "yes" to any of these questions, speak up and report your concern. Being proactive and taking action is doing what's right at Key. Potential problems may only be avoided when they are known.
Asking questions is part of your responsibility in following Key's Code.

Be the red Key.

# Where to seek help.

We are here to help. If you need guidance, the first step is to speak with your manager. If you do not feel comfortable speaking with your manager or are not satisfied with your manager's response, then you should contact one of the following:

**Code of Ethics Officer:** Each line of business and support area has a dedicated Code of Ethics Officer who is specially trained to respond professionally and in as confidential a manner as possible to ethics and other potential violations. A list of Key's Code of Ethics Officers is found on KeyNet's Code of Ethics page.

Your Code of Ethics Officer is your expert for any Code-related questions (either general or specific), such as those concerning limits on gifts and entertainment, working a second job outside of Key or other business-related ethical concerns.

If you are unable to reach a Code of Ethics Officer, you may send an email message to the Code of Ethics mailbox at COE@KeyBank.com.

**Key's Ethics Helpline:** It is understandable that there are some situations where you may feel more comfortable making an anonymous report.

Key's Ethics Helpline (administered by an independent third party) is available toll-free 24 hours a day, seven days a week at 1-866-458-6194.

The Ethics Helpline allows you to report a possible Code violation without necessarily revealing your identity or the identity of the people involved. You will be asked to report the suspected Code violation and the department where the suspected activity is occurring. Please provide as much specific information as possible to facilitate investigation.

An online reporting function enables you to anonymously report ethical concerns or incidents on a secure third-party web form. This reporting is supported by the same independent third party that administers Key's Ethics Helpline. To access this form, go to Key's Code of Ethics page on KeyNet and look under the section titled,

"Report a Concern." Or, from your personal computer, go to www.reportlineweb.com/keybank.

continued on next page

**Q: My co-worker may have gone around our department's procedures to meet a deadline. I'm not sure he's violated the Code. Am I responsible for reporting it?**

**A: You must report it –** to your manager, anonymously, or otherwise – even if you are unsure as to whether it is a violation of the Code. Anyone who violates the Code potentially hurts Key, our employees, and possibly even our clients.

**Q: What if I'm wrong?**

**A:** Reports of possible Code violations are investigated confidentially and thoroughly to determine the required response. We will not permit any retaliation against you for a report made in good faith. While it may feel uncomfortable to make a report about another employee, we value integrity – to be open and honest in everything we do.

Be the red Key.



# Where to seek help.

Audit Committee (for accounting and auditing matters): If your concern involves a questionable accounting or auditing matter and you wish to report the issue independently and confidentially, immediately report it to KeyCorp's Audit Committee via the Ethics Helpline at 1-866-458-6194.

Employee Relations Solutions Team: For professional conduct or other possible policy violations not covered by the Code, employees may call Employee Relations Solutions at 1-888-KEYS2HR (1-888-539-7247).

Corporate Investigations (for internal fraud or criminal violations): If you suspect internal fraud or other criminal violations, including money laundering or terrorist financing, it is your responsibility to immediately report it. Contact the Fraud Hotline or the Ethics Helpline by calling the One Call Enterprise Resolution Center (ERC) at 1-800-967-3333.

One Call Enterprise Resolution Center (ERC): If you are not sure who to call to report an incident or get help, contact Key's One Call Enterprise Resolution Center at 1-800-967-3333 or, in Cleveland, 216-813-4357. They can help connect you to the right place, whether it's the Ethics Helpline, Fraud Hotline, Privacy department, etc.

## Non-retaliation.

Key is committed to supporting the integrity of our company. You are encouraged to speak up if you suspect any unethical activity or behavior at Key. If you speak up, we will not permit any retaliation against you for reporting suspicious activity in good faith and you will not be subject to disciplinary action.

All investigations of employee misconduct concerning the Code will be handled promptly and in as confidential a manner as possible. All conversations and documents generated in connection with an issue or dispute are also considered confidential. Also, if the investigation results in disciplinary action for an employee, documentation of the action will be placed in his or her employment file.

**Q: What happens when you report a concern?**

**A:** We take every report seriously. Here are the steps we take when an investigation is required:

1. The concern is identified as a specific case. Calls to the Ethics Helpline receive a case number.

2. The case is assigned to an investigation team that objectively looks into the concern.

3. During the confidential investigation, the team collects facts, conducts interviews, and reviews documents. In certain situations, you may be asked to provide additional information. If you made the report through the Ethics Helpline, you may remain anonymous.

4. Based on the results of the investigation, disciplinary actions may be recommended.

*For updates, call the Ethics Helpline (with your case number handy) or your Ethics Officer.

9

Be the red Key.



# Offenses and other concerns.

There are types of offenses and regulatory agency actions that you must immediately report to Employee Relations Solutions at 1-888-KEYS2HR (1-888-539-7247).

Aligned with Key's expectations that your conduct is above reproach, you are required to report any of the following incidents to the Employee Relations Solutions team:

- Charged with (but not convicted of) a felony regardless of reason

- Charged with (but not convicted of) a crime involving a breach of trust, dishonesty, substance abuse, or money laundering

- Charged with (but not found liable for) an offense by a regulatory agency or self-regulatory organization that may result in a disciplinary or licensure order

- Convicted of any type of crime (other than a minor traffic offense)

- Found liable for an offense that subjects you to a disciplinary or licensure order by a regulatory agency or self-regulatory organization

Your failure to report any of the above is a violation of the Code.

Periodically, Key also conducts background checks on its employees. If you are selected for a background check, you are expected to fully cooperate in the background investigation. Failure to do so is a violation of the Code.

## Disciplinary action.

The Code is an integral part of your employment at Key. It sets the expectations around what it means to be a Key employee. Any violation of the Code will be reported to your manager and may lead to disciplinary action, including termination of your employment.



**KeyCorp** 2017 Code of Ethics    Go to previous page    Go to next page    Go to last page visited    Go to Table of Contents    Go to Index

10

Be the red Key.



Part 2: Living our values through the code

Be the red Key.

# We take ethics seriously.

**Key is committed to the highest standards of ethical integrity. Our Code of Ethics provides all Key employees and members of the KeyCorp Board of Directors with a set of uniform principles by which we conduct our business and ourselves.**

Each employee and member of Key's Board of Directors is responsible for understanding, adopting, and upholding all of the principles and requirements within the Code and protecting and maintaining Key's reputation. They are required to review and certify their understanding of the Code annually. In addition, employees are periodically required to successfully complete ethics training.

While we periodically revise the Code to ensure coverage of new ethical issues that arise, the basic principles of the Code do not change. Being ethical is part of living our Key Values.



Be the red Key.



# We respect the code.

**Our success is built upon the trust and confidence that our clients, shareholders, vendors, business partners, and communities have in Key and the trust and confidence we have in one another.**

Key's reputation is at stake when the trust or confidence we have with our clients or others is lost. By respecting and following the Code, you help preserve Key's values and the commitment we have to our clients and everyone else with whom we associate.

Your ethical behavior and judgment will ultimately lead to stronger client relationships and a better place to work and conduct business.

## Applying the Code.

Some of Key's business units have their own unique policies governing subjects also covered by the Code. These policies are in addition to the requirements of the Code.

Because the Code does not provide specific guidance for every set of

circumstances, you will find questions and answers throughout this document to help guide you through particular situations. If you have questions, or need help understanding how the Code pertains to a specific situation, speak to your manager or call your Code of Ethics Officer.

## Our expectations of all employees.

As a Key employee you are expected to:

• Know and perform your job

• Comply with all of Key's policies and procedures, including those in your line of business

• Conduct every aspect of Key's business in an honest, ethical, and legal manner in accordance with all applicable laws, rules, and regulations of the localities, states, and countries where Key does business

## Managers' roles and responsibilities.

Our managers are responsible for ensuring their employees complete required training to perform their jobs to the best of their ability. This is in accordance with Key's policies and procedures, applicable laws, rules and regulations, and the Code. When assigning work, it is the manager's responsibility to ensure that the employee has the capability to perform the assignment in conformity with the Code. Key is committed to providing training and direction to our managers so they are able to discuss and address their employees' questions and concerns pertaining to the Code.

## We must always act in a manner that:

**1** Is in the best interests of Key and enhances its reputation

**2** Is in compliance with all applicable laws, rules, and regulations

**3** Preserves the confidentiality of our employees and clients

**4** Avoids conflicts of interest and the appearance of conflicts of interest





Be the red Key.

# Administration of the code.

## Compliance.

A Senior Ethics Officer is appointed and responsible for the administration and governance of the Code. Employees should refer all questions regarding the Code of Ethics requirements to their designated Code of Ethics Officer.

A working group will meet periodically and will recommend Code of Ethics revisions to KeyCorp's Compliance Risk Committee and Board of Directors. Administrative (non-substantive) changes to the Code may be made without formal approval, but must be promptly communicated to employees.

New employees shall either receive a printed copy, or be directed to review an electronic version of the Code of Ethics, upon joining Key's workforce.

You must promptly complete and submit a certification of compliance with the Code in accordance with regular periodic compliance certification procedures established by Key.

## Waivers.

Waivers to KeyCorp directors and Section 16 executive officers of any provision of the Code of Ethics shall only be granted by the KeyCorp Audit Committee after the KeyCorp Board of Directors has been notified of the content of the requested waiver and such waiver shall be promptly disclosed to KeyCorp shareholders. Waivers to all other employees of any provision of the Code of Ethics shall only be granted by a senior manager of the employee's manager and the employee's Code of Ethics Officer after they have been notified of the content of the requested waiver.

Whenever a disclosure, approval, or waiver is required by the Code of Ethics, employees shall promptly submit a written report with a full account of the circumstances to their manager and Code of Ethics Officer.

## Attachments.

Agreements, policies, and other informative notices are sometimes attached to or sent out with a particular version of the Code and remain a continuing requirement for each employee, even though they are not attached to or sent out with a later version of the Code.

Be the red Key.

Part 3: KeyCorp Code of Ethics

Go to Index

Go to Table of Contents

Go to last page visited

Go to next page

Go to previous page

**KeyCorp** 2017 Code of Ethics

Be the red Key.

# We follow the law.

**In conducting our business, we must adhere to a variety of laws and regulations. Each of us must make the right choices, even when we may not be specifically required by law – that is, when it is simply the right thing to do.**

**Key conducts its business in a highly regulated environment.**

We expect our employees and members of Key's Board of Directors to help us adhere to all applicable laws and regulations. We are obligated to comply with all applicable country, federal, state, and local laws, rules, and regulations. This includes all applicable securities laws and regulations, accounting standards, accounting controls, and auditing practices.

If you become aware, either directly or indirectly, of a violation of law or breach of trust, it is up to you to do the right thing and report the violation to one of the following:

• Key's General Auditor

• KeyCorp's Chief Compliance Officer

• Your Code of Ethics Officer

• The Ethics Helpline: 1-866-458-6194

**Full and fair disclosure.**

You are required to make full, fair, accurate, timely, and understandable disclosure in reports and documents that KeyCorp files with, or submits to, the Securities and Exchange Commission or other regulatory agencies, and in other public communications made by KeyCorp.

**Anti-tying.**

We provide a choice of financial products and services designed to meet our clients' needs. However, certain products and services may not be "tied" to other products and services in order to complete the transaction.

"Tying" occurs when the sale or delivery of a service or product is dependent on the "sale" or delivery of another service or product.

You may not require your client to purchase or engage in a nontraditional product or service (see chart at right) as a condition for that client receiving certain terms and conditions for another product or service. Avoiding the improper tying of services and products will ensure we stay in compliance with anti-tying laws and maintain our clients' trust.

**Non-traditional products and services include:**

• Securities brokerage

• Securities underwriting

• Derivatives – swaps, caps, and collars

• Insurance and annuities

• Foreign exchange

• Mutual funds

• Merger/acquisition advisory services

• Leases that are not credit extension equivalent

For additional guidance see Key's Anti-Tying Policy located in the policy finder on KeyNet.



Be the red Key.

## Top three employee ethics concerns:[1]



**1.**
Gifts and prizes

**2.**
Taking a second job

**3.**
Entertainment and travel
(and)
Non-profit roles[2]

[1] As reported to Key's Code of Ethics officers in 2016.
[2] "Gifts and prizes" and "Non-profit roles" tied for the third-most reported employee ethics concern.

**KeyCorp** 2017 Code of Ethics

# EXHIBIT A, part 2

# We recognize and avoid conflicts of interest.

**Conflicts of interest occur when you receive an improper personal benefit as a result of your position at Key or your private interest interferes, or even appears to interfere, in any way with Key's interests as a whole. Here are some, but not all, situations that may lead to conflicts of interest:**

## Gifts and entertainment.

Businesses and their clients commonly exchange gifts and extend invitations to entertainment events as a way to build and strengthen relationships and trust.

The acceptance of gifts and entertainment is often reasonable and considered a courtesy. In some cases however, the offer of gifts and entertainment may have the intent of improperly influencing the recipient. The nature and frequency of the gifts or entertainment provided will be considered for purposes of this Code. Acceptance of an inappropriate gift or entertainment can suggest that you may not be independent and objective in dealing with the client, vendor, or business partner. As an employee, you need to act in a way that ensures these conflicts of interest do not exist or appear to exist.

## Gifts.

You may accept or provide normal business gifts that facilitate the discussion of business, foster good business relations, or serve some other demonstrable business purpose.

## Gift or prize acceptance.

Gifts or prizes of nominal value may be accepted from present or prospective clients or third parties (including but not limited to vendors, suppliers, and business partners) with whom you maintain an actual or potential business relationship.

*continued on next page*

Be the red Key.

# We recognize and avoid conflicts of interest.

**Gift or prize acceptance.** *continued*

Generally, gifts and prizes accepted must not exceed US $200 in aggregate value from any one person or entity in any one calendar year unless you obtain approval from your manager and Code of Ethics Officer. Certain business units may be prohibited from accepting gifts with values greater than $100, based on regulation or policy. Contact your Code of Ethics Officer to determine limits applied to your business unit.

Under limited circumstances, a prize in excess of $200 may be approved. Some of the parameters include:

- The prize may not be provided by a Key client or third party with whom the employee has a business relationship or contract responsibilities
- The selection process must be random and from a minimum number of participants or from a contest where each participant has an equal chance of winning
- The employee winning the prize must not be in a position to influence any business with the provider of the prize

Contact your Code of Ethics Officer for specific requirements and to obtain approval. Discounts and price reductions not generally available to others are considered gifts. You may not accept any gifts or prizes in cash, check, cash card, bank or credit card company gift card, or any other cash equivalent in any amount from any client or third party; and you must report any such offered gift or prize to your manager.

Regardless of value, tickets to the following events may not be accepted as gifts or purchased from clients or third parties without approvals from the employee's direct supervisor, Senior LOB Executive and Code of Ethics Officer: college or professional team sport playoff, tournament or bowl games and professional tennis or golf major championship tournaments. This does not prohibit employees from attending such an event with a client or third party when the invitation to the event meets the entertainment standards and requirements outlined later in the Code.

Further, you are expressly prohibited from soliciting, demanding, or accepting anything of value with the intent to be influenced or rewarded in connection with any business transaction or relationship involving Key.

The term "gift" does not include any discounts or programs that are available to all employees under a general offer that has been approved by Key.

*continued on next page*

**Q: A client gave me a gift basket filled with coffees, wines, cheeses, and chocolates. Can I accept it?**

**A:** Maybe. Business gifts are one way of showing thoughtfulness and gratitude and can build relationships and create goodwill. But gift giving in business needs to be performed in a way that is appropriate and does not create an actual or perceived conflict of interest.

You may accept gifts as long as the value received doesn't exceed $200 in a calendar year and the intent serves a business purpose. If the gift is valued at $200 or more, you may return it to the person or organization who gave it to you, share it with your department (with no one receiving greater than $200 in value) or donate it to a charity. Questions? Talk to your manager and Code of Ethics officer.

**Q: As a Relationship Manager, my clients sometimes offer me goods or services at a reduced rate or cost. May I accept those offers?**

**A:** As an RM, you act in a direct relationship capacity with your client. Employees may not purchase or rent property, goods, or services from clients unless those discounts or price reductions are generally available to others, the transactions are made on market terms or the discount is less than the annual gift exception. Contact your Code of Ethics Officer if you have questions.

Be the red Key.

# We recognize and avoid conflicts of interest.

### Providing gifts.

You may give a gift of nominal value to an employee, current or prospective client, or third party with whom you maintain an actual or potential business relationship if it is reasonable and customary for the occasion.

Gift-giving must comply with all applicable expense and approval policies. No lavish gifts may be provided.

### Entertainment.

"Reasonable entertainment" is entertainment that facilitates the discussion of business, fosters good business relationships, or serves some other demonstrable business purpose.

Here's a test to help determine whether or not entertainment may be accepted:

"Would Key reimburse you to entertain the client or third party for the same or a similar purpose?"

If the answer is "No," then it is unlikely that Key would allow you to accept that same entertainment from a client or third party. Questions? Call your Code of Ethics Officer.

You may accept an invitation to reasonable entertainment offered by a current or prospective client or third party and the client or third party may pay for the entertainment. Multiple invitations from the same client or third party must each meet the reasonable entertainment definition and should be discussed with your manager regarding acceptance. However, if the client or third party is not present at an entertainment event, it is considered a gift and is subject to the Gift provisions of the Code.

Under no circumstances should entertainment be accepted from a vendor or third party who is actively bidding for, negotiating, or re-negotiating business with Key. With the assistance of your Code of Ethics officer, you are expected to determine if such activity is ongoing before accepting an invitation.

### Out-of-town events.

Prior approval of your manager and Code of Ethics Officer is required to accept an invitation from a client or third party paying expenses for any out-of-town sporting or social event. If an event occurs more than 150 miles (or 250 kilometers) from your work location, it is considered out-of-town. For out-of-town events, you may accept only the event ticket and any meals and entertainment served or provided in conjunction with the event. Payment of transportation, lodging, and meals not directly provided in conjunction with the event may not be accepted or expensed. If you are offered or receive something of value beyond what is authorized in this Code, you must promptly disclose that fact to your Code of Ethics Officer. If you have doubts about an invitation, seek approval. In many cases the adverse consequences of a conflict of interest can be mitigated by disclosure.

Remember, you are responsible for following any specific line of business policies applicable to out-of-town events.

*continued on next page*

**Q: A vendor invited me to attend an out-of-town seminar with her team where we may attend social outings after the seminar. Do the restrictions for out-of-town social events apply in this situation?**

**A: It is not always clear whether an event should be considered social or business. There may be instances in which business discussions occur during a social event. You should request approval from your manager and Code of Ethics Officer to determine whether or not you may accept the invitation. The criteria we use to determine whether an event is social include:**

- **Event location (e.g., beach resort versus conference center)**

  ◦ **Types of expense payments being offered by the vendor (e.g., lodging versus theater tickets)**

- **Inclusion of a guest in the invitation**

20

---



**KeyCorp** 2017 Code of Ethics

Be the red Key.

# We recognize and avoid conflicts of interest.

## Providing entertainment.

Key reimburses expenses for reasonable entertainment you provide to current or prospective clients or third parties. However, you are not permitted to engage in lavish entertainment or entertainment that is not reasonable or customary in your line of business.

For more information about gifts and entertainment, talk to your manager and Code of Ethics Officer.

## Bequests.

A bequest is the act of leaving or giving something of value in a will. As a trusted advisor, you are encouraged to build strong relationships with Key's clients and third parties. However, the acceptance of a bequest from a client or business partner may raise questions about the propriety of that relationship. It could also subject Key to legal risk from other beneficiaries or family members.

You must report to your manager and Code of Ethics Officer any potential or actual bequest made to you by a client or third party under a will or trust instrument. This report must be made, whether or not Key is the named fiduciary, unless the client or third party is a member of your immediate family.

Such bequests shall be subject to the approval of your manager, Code of Ethics Officer, and your Market President or Line of Business executive. The nature of the employee's relationship will be considered in the review and approval process.

## Outside employment and business activities.

Conflicts of interest can sometimes arise when employees take external jobs or make certain investments or business arrangements.

To reduce that risk, you may not:

• Accept employment or engage in a business (including consulting or arrangements with competitors) that may conflict with your job duties or Key's interest

• Engage or invest in any business that directly or indirectly competes with services provided by Key or any subsidiary of Key, except where your investment represents insignificant ownership in a publicly traded company

• Use confidential information obtained through your position at Key for personal benefit

You are required to disclose outside for-profit business, civic, political, and fiduciary activities annually via the Reportable Activity process. You can complete this during the annual Conduct & Ethics certification process.

*continued on next page*

**Q: One of my clients invited my spouse and me to join him and his spouse for a baseball game. May I accept the invitation?**

**A: You and your spouse may accept the invitation if:**

• Your attendance facilitates the discussion of business, fosters good business relations, or serves some other demonstrable business purpose

• Key would pay for your spouse's attendance if you were entertaining the client

• Invitations are extended to spouses of all attendees and the practice is customary for the event

Questions about the acceptance of invitations extended to spouses and others may be directed to your Code of Ethics Officer.



Go to previous page   Go to next page   Go to last page visited   Go to Table of Contents   Go to Index



Be the red Key.

# We recognize and avoid conflicts of interest.

## Second jobs.

Before accepting or starting any part-time or full-time work outside of Key, including sole proprietorships, you should review your planned external job duties with your manager. Your Code of Ethics Officer may be contacted to ensure you will not be in violation of your responsibilities under the Code. As a general rule, you may not perform on a part-time, full-time, or consulting basis any function that you perform as a Key employee.

Employees may not use Key's resources, such as phones, email, computers, etc., to conduct activities for the benefit of their second job.

Also, you are prohibited from taking compensated full-time or part-time positions with Key clients when the position would give you an ability to exercise a level of managerial or financial control with that client or organization.

If you obtain a second job outside of Key, you may not accept an assignment from any third-party employer that would have you doing work for KeyCorp or any of its subsidiaries or affiliates and you may not accept an assignment for or with a competing financial institution, even if the job function is entirely different from your job at Key.

### Real estate license.

Selling real estate can be an attractive part-time job. However, this job has a unique potential for conflicts of interest requiring certain restrictions and disclosures. Formal approval from your manager and Code of Ethics Officer is required. Employees of KeyBank Mortgage, mortgage operations, those who work with Key OREO interests, and those who have oversight responsibilities for these areas are not eligible to receive approval to act as a real estate agent or broker.

You are required to disclose to both your real estate brokerage firm, and all real estate clients, that you are:

- Employed by Key
- Prohibited from involvement in procuring a loan as agent or broker (including providing financing referrals) regardless of the lender
- Prohibited from working with those real estate clients in any role you have at Key

You must notify your manager and Code of Ethics Officer once you have made the disclosure to your brokerage firm. In addition, you may not act as an agent or broker for the sale of any distressed property on which Key has a lien.

Employees accepting real estate positions are reminded to review and follow all applicable licensing rules and regulations.

continued on next page

**Q: I am occasionally asked to teach seminars on subjects I've developed an expertise on at Key. Do I need pre-approval?**

**A:** Permission is not required as long as you do not do so during working hours, your activity is on a limited basis, and you do not disclose confidential information. If you're asked to participate during normal work hours, you need your manager's permission.

If you are offered a fee, you may accept the offer with your manager's approval and either:

1. Pay the fee to Key; or
2. Retain the fee if you speak while on personal time off and get approval from your Code of Ethics Officer.



Be the red Key.

# We recognize and avoid conflicts of interest.

### Holding office/appointments.

Many employees formally participate in both nonprofit and for-profit organizations. These roles often include positions of influence that benefit Key, the external organization, and the employee.

You must avoid appointments, including fiduciary appointments, which may conflict with the performance of your duties for Key or otherwise interfere with your employment relationship with Key.

Employees who receive compensation based on Key's relationship with the client (e.g., Relationship Managers) or who have decision-making authority for the client (e.g., credit officer) are prohibited from accepting a Board appointment with that client without prior approval from their manager, Senior Line of Business Executive, and Code of Ethics Officer. Contact your Code of Ethics Officer with related questions.

If you act as a director, officer, partner or in some other formal capacity on behalf of a non-profit or for-profit organization, you must remove yourself from discussions and decisions regarding Key, its products and services or when Key may be a competitor for the business.

To obtain information on the procedure to remove yourself from these discussions or decisions, review Key's Recusal Procedures.

You may introduce other Key employees to organization officials, but you should avoid direct involvement regarding Key accounts, transactions, terms or conditions. Employees requested to perform non-discretionary transactions on Key accounts (e.g., writing checks) for the benefit of the organization must disclose that request to their manager and Code of Ethics Officer for review. If you receive approval, you should avoid performing both the transactions and reconciliations of the related accounts to ensure appropriate segregation of duties.

These precautions will reduce the potential for conflicts of interest and help protect the employee from any potential allegations of impropriety that may arise.

Finally, you may not represent to anyone (either verbally or in writing) that you are acting on behalf of Key in your service to the organization.

You are encouraged to contact your Code of Ethics Officer with any questions.

continued on next page



Be the red Key.

# We recognize and avoid conflicts of interest.

## Non-profit organization roles.

You are encouraged to participate in charitable, educational, or community activities. No approval is required to accept a volunteer position with a non-profit organization. Approval from your Manager and Code of Ethics Officer is required to accept a compensated position with a non-profit organization.

To discuss indemnification or insurance protection, contact the organization's legal counsel or the Deputy General Counsel of Key's Law Group responsible for Corporate Governance.

Employees working with external charitable organizations or with KeyBank Foundation should be aware of, and comply with, all applicable prohibitions and policies regarding self-dealing.

## For-profit organization roles.

Before you may become a director, officer, or partner of any business organized for profit, you must obtain written approval from the Senior Executive responsible for your business

unit (or their designee), your manager, and your Code of Ethics Officer. This role should be disclosed annually. If the service is on behalf of Key, you must turn over all compensation received for such service to Key other than reimbursement of out-of-pocket expenses.

Directorships at publicly-held corporations are discouraged because of the additional risks these positions may pose. You must consult with your manager and Code of Ethics Officer before formally submitting a request.

## Fiduciary appointments.

Because of the potential conflicts that could exist, you are prohibited from accepting or maintaining trusteeships and other fiduciary appointments for your own client or clients for whom you may open accounts or conduct transactions.

Exceptions may exist for certain Retail banking employees per the Community Bank's Prohibited Conduct Policy. Additional information is available from your Code of Ethics Officer.

All other fiduciary appointments, except those on behalf of your immediate family members (see list at right), must be approved by your manager and Code of Ethics Officer prior to accepting the appointment. This role should be disclosed annually. Only a nominal fee may be accepted. If you wish to act as a trustee or executor/executrix personally for anyone other than an immediate family member, you are required to:

• Provide a standard notification (available from your Code of Ethics Officer) to all beneficiaries indicating that you are acting personally in the fiduciary role and independently of Key

• Document that you have provided the notification

**Q: As a Branch Manager, I have built relationships with many of our clients. Occasionally, a client asks me to serve as the executor for his/her estate. May I?**

A: No. As the executor of an estate, you have a fiduciary duty to the estate which may conflict with your duties and obligations as a Key employee. Additionally, as an employee, any problems, claims or liability resulting from your role as the executor of a client's estate may subject Key to similar claims and liability.

Both steps are required prior to receiving Code of Ethics approval.

"Immediate family members" include:

• Children
• Parent
• Spouse/domestic partner
• Sibling
• Grandparent
• Aunt and uncle
• In-laws (mother, father, brother, sister, son, and daughter)

If employees have a fiduciary duty to an individual or organization, they are not eligible to receive fees for the referral of that business to Key.

*continued on next page*

Be the red Key.

# We recognize and avoid conflicts of interest.



## Personal finances and opportunities.

You are expected to demonstrate the ability to properly manage your personal finances, particularly the prudent use of credit. You are encouraged to obtain counseling through Key's Employee Assistance Program if you encounter personal financial problems.

Employees and members of Key's Board of Directors may not personally benefit from opportunities discovered through the use of:

• Key property

• Non-public information (such as processes, programs, software, and business information and plans) about Key or its businesses

◦ Your position at Key

If you discover an error, such as a mistake in your pay (including incentive plan payments) or an expense reimbursement discrepancy, you must report the issue to your manager. Failing to do so may lead to disciplinary action, up to and including termination of employment.

## Loans.

Loans to you from Key or any of its subsidiaries may be made only in the ordinary course of business. You may not borrow or accept money from any current or potential client or third party unless they are a financial institution that makes such loans in the ordinary course of their business.

You may not personally make loans to Key's clients or third parties.

Members of KeyCorp's Board of Directors and its subsidiary banks, and corporate and bank executive officers, are subject to the provisions of Regulation O of the Federal Reserve Board of Governors with regard to all extensions of credit from KeyCorp's bank subsidiaries.

All members of KeyCorp's Board of Directors and corporate executive officers are subject to the provisions of the Sarbanes-Oxley Act of 2002 for extensions of credit made or arranged by KeyCorp or its subsidiaries.

continued on next page

Be the red Key.

# We recognize and avoid conflicts of interest.

## Trading in stock.

As employees and members of the board of directors of a financial institution, we may be perceived as having an advantage in making investment transactions for our own accounts. The following rules aim to prevent employees and board members from entering into transactions that could be perceived as unfairly advantageous and to avoid improperly harming those for whom we make trades. Regulatory agencies monitor and review Key employee transactions. Significant penalties may be levied on both you and Key if these rules are broken. See the KeyCorp – or any applicable line of business – policies relating to Insider Trading and Personal Investment for more information.

## Trading in KeyCorp stock.

If an employee or member of Key's Board of Directors has non-public information concerning Key that may have an impact on the market price of KeyCorp stock when released, he or she may not buy, sell, donate, or participate in a KeyCorp stock transaction. Additionally, you are prohibited from speculative trading (including short sales and trading in puts, calls, and other options or derivatives) in KeyCorp securities.

If you have any questions concerning your participation in a KeyCorp stock transaction, refer to the Insider Trading Policy applicable to your line of business.

## Trading in the securities of KeyCorp clients or third parties.

You may not buy, sell, or otherwise invest in the securities of a KeyCorp client or third party if the securities are publicly traded and you have material nonpublic information concerning them at the time of the proposed transaction.

If you are involved with any business transactions with a Key client, you must comply with all investment policies applicable to your business unit before making an investment in the client's securities. You may not buy, sell, or otherwise invest in the securities of a Key client if you are involved in extensions of credit to the client. In no case may you invest in your own client's securities until after making disclosure of the proposed investment to your manager and Code of Ethics Officer.

If you currently participate in the business transactions of a Key third party on behalf of Key, you may be restricted from buying, selling, or otherwise investing in their securities.

Contact your Code of Ethics Officer and manager to discuss. If you are unable to reach a Code of Ethics Officer, you may send an email message to the Code of Ethics mailbox at COE@KeyBank.com

If you have an existing investment in the securities of a third party and you participate in business transactions with them, you must promptly disclose the investment to your manager and Code of Ethics Officer. In addition, you must refrain from further participation with the third party unless expressly authorized in writing by your manager and Code of Ethics Officer.

*continued on next page*





Be the red Key.

# We recognize and avoid conflicts of interest.





### Personal business interests.

You may not purchase any type of property (including real estate, furniture, or equipment) from Key without the approval of your Code of Ethics Officer and the Senior Executive (or their designee) responsible for your business unit. On occasion, Key may make a general offer of company property to employees on a non-discriminatory basis. Employees are permitted to make purchases during these offerings.

You are prohibited from purchasing property, directly or indirectly, from Key that has been obtained by Key through repossession, foreclosure, or via a short sale financed by Key.

You may not sell more than US $500 worth of property or services to Key in any calendar year. If you wish to act as a vendor, you must gain approval from your Code of Ethics Officer, who may confer with Key's Corporate Procurement Group to determine the reasonableness of the selling price.

### Doing business with third parties.

Third parties often act on behalf of Key or represent Key through agreed upon business arrangements. We expect our third parties to act openly, honestly, and ethically.

Be the red Key.

"Ethical behavior is critical to Key's success. Our employees are encouraged to always act with integrity and carefully balance risk and reward. In fact, research shows that stock prices are higher and employees are more satisfied at companies that have a strong ethical culture, fair and responsible business practices, and good governance. That is why it is every employee's job to act fairly and responsibly in all situations to uphold Key's strong ethical culture."

Bill Hartmann, Chief Risk Officer, KeyCorp

 Click here to listen to a message from Bill Hartmann.

Be the red Key.

# We conduct our business ethically.

**Ethical business practices are everyone's responsibility. They include not just how we deal with external clients, but also how we conduct business internally.**

## Internal accounting controls.

Key is required by law to develop and maintain systems of internal accounting controls. Each of us has a responsibility for ensuring that all of Key's financial and business records meet the highest standards of accuracy and completeness.

We provide accurate information about Key's business in a timely and complete manner. We must ensure that the preparation of financial statements, reports, and accounts is in accordance with all applicable laws, rules, and accounting principles.

For example, you must not:

- Make false claims on an expense report or time sheet
- Enter false or incorrect client or transaction information
- Improperly delay the approval or submission of vendor invoices
- Make inaccurate entries into any of our books or records

The actions listed above may be a violation of the Code and must be reported. In addition, they may result in disciplinary action.

### Questionable accounting or auditing matters.

To ensure you have the ability to report questionable accounting or auditing matters independently, anonymously, and confidentially, you can contact the KeyCorp Audit Committee directly.

If you have any reason to believe that any of Key's books or records are being falsely or improperly recorded, or if you feel pressured to prepare, alter, conceal, or destroy documents in violation of company policy or procedure, it is your duty to immediately speak up.

The Ethics Helpline allows you to contact the Audit Committee directly at 1-866-458-6194.

### Providing professional advice, referrals or recommendations.

Periodically, clients or other third parties may approach you to request professional advice, referrals or recommendations not in the usual course of business.

Examples include:

- Providing legal, tax, accounting, or investment advice
- Recommending attorneys, accountants, securities dealers, insurance agents, brokers, real estate agents, or other service providers

If your role at Key does not include providing tax, legal, accounting, or investment advice, doing so may create legal liability for both you and Key. In addition, you may not provide referrals and recommendations for professional services beyond your normal job duties or in exchange for any personal benefit. Follow your business unit's policies and procedures regarding referrals and recommendations.

*continued on next page*

Be the red Key.

# We conduct our business ethically.

## Fair dealing and incentives.

Each of us must act in good faith and deal fairly with others. Employees and members of KeyCorp's Board of Directors may not:

- Take unfair advantage of any client or third party, competitor, or Key employee through manipulation, concealment, abuse of privileged information, misrepresentation of material fact, or any other unfair dealing or practice

- Receive compensation, gifts or prizes from clients or third parties to perform tasks for which you are paid by Key

- Solicit, demand, accept or agree to accept anything of value from any person in conjunction with the performance of your duties for Key

- Act on behalf of KeyCorp in any transaction involving others with whom you or your immediate family has any significant direct or indirect financial interest

- Accept personal fees, commissions, other compensation, or expenses paid or reimbursed from others, not in the usual course of Key's business, in connection with any business or transaction involving Key

## Solicitation of contributions.

Many of us volunteer our time to charitable and civic organizations that conduct fundraising events each year. To avoid misleading perceptions, you may not request contributions on behalf of Key from a client or third party. For example, a client receiving such a request may expect future concessions on pricing or terms, while a vendor or business partner may believe that declining such a request could influence their existing or potential contracts with Key.

**Q:** I'm on a silent auction committee for a nonprofit fundraiser. Is it OK for me to ask some of my clients and vendors to donate items to the silent auction?

**A:** Using your position at Key to ask clients and third parties for auction items may place an unnecessary expectation on the relationship. For instance, clients may expect favorable pricing or concessions on future transactions in exchange for their contribution. A vendor might believe that declining a request could influence existing or potential contracts with Key.

This does not prevent you from soliciting contributions on behalf of the not-for-profit organization. If you contact a Key client or vendor, you must make it clear that you are representing the charitable organization and are making the request on its behalf, and not on behalf of Key.

This restriction does not prohibit an employee from soliciting contributions from a Key client or third party for the benefit of a charitable organization if the employee is not acting on behalf of Key.


**KeyCorp** 2017 Code of Ethics     Go to previous page     Go to next page     Go to last page visited     Go to Table of Contents     Go to Index

30

Be the red Key.

# We follow all government requirements.

## Doing business with public officials/entities

Public officials are entrusted with the welfare of those whom they serve and held to a high ethical standard. Since you represent Key, any interactions you have with public officials must also carry the same high ethical standards.

Public officials are individuals who are running for, elected or appointed to a public office, or are employees of a public entity.

A public entity is any government entity at the federal, state or local level. Public entities include boards and authorities. Public entities may also include public school systems, public colleges, and public universities.

Gifts and entertainment for public officials are strictly prohibited unless prior approval is received. See the Public Entities Policy.

Certain circumstances in which a public official is entertained may be acceptable if the official pays for his or her own entertainment.

Key encourages you to participate in your community. However, certain business units within Key may further restrict dealings with government officials/entities and limit your direct participation or contribution.

For additional guidance, refer to your specific business unit requirements and the Public Entities Policy.

### Anti-corruption and anti-bribery.

Corruption is an abuse of a position of trust in order to gain an undue advantage. Corruption is deliberate or intentional wrongdoing, not negligence or a mistake. A primary form of corruption is bribery. Bribery is the act of providing, or promising to provide, anything of value to someone with power to gain his or her improper influence.

Typically, bribes are given to obtain an illegal benefit or advantage. Bribery is unlawful and Key enforces a zero tolerance policy. You may never offer, provide, solicit, demand, authorize, promise or accept a bribe. Bribes include actions taken to influence others or to be influenced in order to gain an improper advantage with business performed for Key. If you participate or have knowledge of corruption or bribery, you and Key may be at risk of criminal and civil sanctions.

### The Foreign Corrupt Practices Act.

The Foreign Corrupt Practices Act (FCPA) makes it a crime for any U.S. person or corporation to conduct bribery and related acts of corruption of foreign officials. Typically, corruption occurs for purposes of retaining, obtaining, or securing an advantage in business decisions. You must follow the FCPA and other related laws that prohibit corrupt activities with foreign and domestic governments and officials.

If you participate in, or have knowledge of, foreign corruption, both you and Key may be at risk of criminal and civil sanctions.

To report a concern regarding FCPA violations, refer to the Foreign Corrupt Practices Act Policy.



Be the red Key.



# We follow all government requirements.



## Corporate political contributions.

Strict limitations exist on political contributions made by banks. Making any political contribution on behalf of Key that violates the law is prohibited. You may join Key Advocates Fund, Key's Political Action Committee (PAC), and endorse candidates who support Key's interests. Participation is voluntary, and under no circumstances should you feel pressure to contribute to any political initiative. Additional information can be found in the Public Entities Policy.

## Personal political activities and contributions.

Key encourages you to participate in civic and political activities. Before running for, or accepting a part-time elected or appointed political office, you must seek and receive approval under procedures established to ensure that your candidacy or acceptance of a role would not be prohibited or cause a conflict of interests.

Employees should submit an approval request via Key's Reportable Activities database or contact their Code of Ethics Officer for more information.

After accepting a part-time elected or appointed political office, you must:

- Remove yourself from discussions and decisions regarding Key, its products and services, and when Key may be a competitor for the

business. To obtain information on the procedure to remove yourself from these discussions or decisions, review Key's Recusal Procedures.

- Disclose your elected or appointed position annually through the Reportable Activity process. (You can easily complete this during the annual certification process for the Code.)

If you choose to participate in a political campaign, you must comply with certain laws, rules, and Key's Public Entities Policy. It is your responsibility to ensure that your participation does not hinder Key's ability to conduct business. Your participation in political activities should represent your individual interests and not those of Key.

Such activities must:

- Be on your own time
- Utilize your own resources

If you solicit contributions on behalf of a candidate or campaign, you must:

- Follow the guidelines above
- Act in your personal capacity
- Communicate your role (on behalf of the candidate or campaign) to the person being solicited
- Never solicit contributions on behalf of Key



Be the red Key.

# We safeguard our clients' and Key's assets.

Our clients trust us to keep their information safe and secure.
We must ensure that no breaches of that trust occur.

Safeguard:

- **Key's physical assets and facilities**
- **Trade secrets/intellectual property**
- **Electronic communications**
- **Publishing and/or presentations**
- **Use of non-public information**

**Confidentiality – protecting clients' and Key's information.**

Our clients trust us to keep their information safe and secure.

**Non-public information.**

Non-public information regarding Key or its businesses, employees (e.g., SSN or medical information), clients, third parties, or consumers is confidential. Members of KeyCorp's Board of Directors and Key employees may not access or view such information without a business justification, disclose such information, or use it for trading in securities, or for other personal gain during or after employment. This includes the unauthorized use and disclosure of confidential supervisory information (e.g., reports of bank examination and other confidential reports prepared by banking regulators).

Key employees may use confidential information to perform their job duties when permitted by Key's policies. You must not confirm or deny whether a person or organization is a client of Key nor disclose any personal private information to anyone external to Key without business justification and approval.

**Presentation and publishing guidelines.**

Key employees occasionally share their expertise with others outside of our organization. When communicating about Key's products, services, and processes, you must refrain from sharing confidential or proprietary information.

All presentation materials or proposals to publish should meet the requirements of Key's Presentation and Publishing Disclosure Guidelines and specific line of business requirements.

**Information and Physical Security.**

You are required to comply with the Security Policies and Standards as applicable to your job responsibilities and as noted in the information Security Policy and relevant Security Standards.

Be the red Key.



# We safeguard our clients' and Key's assets.

## Key's physical assets and facilities.

As an employee or member of Key's Board of Directors, you play an important role in safeguarding our clients' and Key's assets. You may not permit Key's property (including data transmitted or stored electronically and computer resources) to be damaged, lost, used, or intercepted in an unauthorized manner.

## Electronic communications.

Much of our business is conducted electronically.

Our employees and members of Key's Board of Directors may not misuse Key's information technology and electronic message communications system, including:

- Accessing or distributing pornographic or sexually explicit information

- Sending chain letters

- Conducting excessive personal business

## Privacy.

Information sharing: You may only access customer information with a valid business purpose. You may be subject to sharing and use restrictions across KeyCorp affiliates or with external third parties.

Do Not Solicit: You may be prohibited from contacting an individual or business for solicitation purposes. Key's Privacy Policies, Privacy Guidelines and other Privacy reference materials provide specific information and contact information about Privacy requirements.

## Trade secrets/Intellectual property.

It is important to preserve and protect both the confidentiality of our Trade Secrets and ownership of Intellectual Property.

Key's Trade Secrets are those processes, techniques, programs, software, formulas, methods, financial information, compilations and lists, and other business information or plans that are developed, owned, used, or maintained by Key (or its clients or suppliers) and that are not in the public domain.

Key's Intellectual Property is any invention, product, market or business plan, process, program, software, formula, method, work of authorship, or other information or thing that is unique and of value to Key.

Upon hire and during our annual Conduct & Ethics certification, every employee is required to agree to the protection of Key's Trade Secrets and Intellectual Property. The Agreement Regarding Trade Secrets, Intellectual Property, and Non-solicitation of Employees provides more information.

## Indirect action.

Key values personal accountability and integrity. You are responsible for all actions knowingly taken on your behalf through another person that, if taken directly by you, would violate the Code.



Be the red key.

# Index of topics.

Administration of the Code 14
Anti-corruption and anti-bribery 31
Anti-tying 16
Bequests 21
Compliance 14
Conflicts of interest 19
Corporate political contributions 32
Disciplinary action 10
Doing businesss with public officials/entities 31
Doing business with third parties 27
Electronic communications 34
Employee promise 5
Entertainment 20
Fair dealing and incentives 30
Fiduciary appointments 24
Following laws, rules, regulations, and policies 16
For-profit organization roles 24
Foreign Corrupt Practices Act 31
Full and fair disclosure 16
Gifts 18
Gifts and entertainment 18

Holding office/appointments 23
Indirect action 34
Information and physical security 33
Internal accounting controls 29
Key values 6
Key's physical assets and facilities 34
Loans 25
Managers' roles and responsibilities 13
Message from Beth Mooney 3
Message from Bill Hartmann 28
Non-profit organization roles 27
Non-public information 24
Non-retaliation 33
Non-traditional products and services 9
Offenses and other concerns 16
Out-of-town events 10
Outside employment and business activities 20
Personal business interests 21
Personal finances and opportunities 25
Personal political activities and contributions 32

Presentation and publishing guidelines 33
Privacy 34
Professional conduct 5
Providing entertainment 21
Providing professional advice, referrals or recommendations 29
Questionable accounting or auditing matters 29
Real estate license 22
Reporting concerns 7
Second jobs 22
Solicitation of contributions 30
Top three employee ethics concerns 17
Trade secrets/intellectual property 34
Trading in KeyCorp stock 26
Trading in stock 26
Trading in the securities of KeyCorp clients or third parties 26
Waivers 14
What happens when you report a concern? 25
Where to seek help 8

# EXHIBIT B

## OPEN DOOR POLICY

Key* has a long history of fostering a positive work environment that encourages open communications as a means of solving work related issues. If an employee has an issue or concern with any phase of the business operation, Key encourages the discussion of the issue between the employee and his or her immediate supervisor. If the employee chooses not to discuss the matter with his or her immediate supervisor, the employee is encouraged to contact his or her next level manager. Then, if the issue is still not resolved, the employee is encouraged to contact the ER Solutions Team at 1-888-KEYS2HR to help bring about a quick, confidential and informal resolution of the problem.

However, differences occasionally arise that cannot be resolved through informal methods of dispute resolution. In these rare instances, Key believes that such disputes can be best resolved through a formal internal dispute resolution process, which includes senior management review and resolution of the issue. Key's Open Door Policy provides a voluntary, quick, neutral and confidential process for employees to resolve employment related concerns. Key's Open Door Policy is a process that requires the employee to provide facts and details regarding their concerns and to complete each step prior to proceeding to the next step. The process ends when the employee initiating the review accepts the decision following Step One or when Step Two of the process is concluded.

### Process
Employees are encouraged to first discuss the issue with his or her immediate supervisor prior to initiating the formal process. There are two steps in the Open Door process.

Step One: If the employee's issue has not been resolved in his or her discussion with his or her manager, supervisor, higher level management, or the ER Solutions Team, the employee should submit his or her concerns using the Dispute Resolution form which can be obtained by contacting the ER Solutions Team at 1-888-KEYS2HR. The completed form should be submitted to the ER Solutions Team email address: ERST_Team@KeyBank.com or via fax at 1-216-370-9260. Employees should include any supporting documentation if available, and facts and details sufficient that their claim can be investigated. The Open Door Dispute Resolution Request process cannot be conducted if this information is not provided.

All requests for review must be submitted in writing and must include the following information:
- A detailed description of the dispute including facts and details sufficient that their claim can be investigated;
- The steps taken to resolve the dispute prior to submitting an Open Door Dispute Resolution Request;
- The date the dispute arose;
- The desired outcome requested by the employee; and
- Additional information including the names of other employees who may have knowledge of the issue which may assist Key in resolving the dispute.

Employees are encouraged to initiate the formal dispute resolution process within 20 business days of the incident. An Employee Relations professional will be assigned to work with the Second Level Manager (i.e., the employee's manager's manager) through the process. Based on the Second Level Manager's prior involvement in concern or based on business needs, the Second Level Manager may designate another member of the group's leadership team to participate on his or her behalf. Upon receipt of the Dispute Resolution Form and during the process, the Second Level Manager (or designee) and Employee Relations professional will contact the employee to discuss the issue. If applicable, the Second Level Manager (or designee) and Employee Relations professional may contact other employees regarding the dispute.

At the conclusion of the discussion relating to the dispute, the parties agree that all facts relating to the dispute have been brought forward. The Second Level Manager (or designee) and the Employee Relations professional will determine the resolution to the dispute and will provide a written response to the employee within 20 business days from submission of the Dispute Resolution Form. The Second Level Manager (or designee) and Employee Relations professional must notify the employee if it is not possible for the written response to be given to the employee within the 20 business day time frame. If the employee is satisfied with the resolution, then the Open Door process is complete.

Step Two: If the employee's issue has not been resolved in Step One, he or she may resubmit the Dispute Resolution Form with a detailed explanation as to why he or she feels the issue was not resolved in Step One to the ER Solutions Team: ERST_Team@KeyBank.com or via fax to 1-216-370-9260. . In the Step Two request, the employee must include either information disputing the facts and considerations upon which the Step One decision

*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".



Revised 120717
KeyCorp Internal

was made causing the employee not to agree with the decision. The Step Two process cannot be conducted if this information is not provided.

Employees should initiate the appeal process within 20 business days of receiving a response from Step One. Upon receipt of the Dispute Resolution Form and during the process, the Third Level Manager and the Director of HR Operations, Employee Relations & HR Compliance (or delegate as applicable) will contact the employee to discuss the issue if additional clarification is needed with details provided on the Dispute Resolution Form. Based on the Third Level Manager's prior involvement in concern or based on business needs, the Third Level Manager may designate another member of the group's leadership team to participate on his or her behalf. If applicable, the Third Level Manager (or designee) and the Director of HR Operations, Employee Relations & HR Compliance (or delegate) may contact other employees regarding the dispute as appropriate.

At the conclusion of the discussion relating to the dispute, the parties agree that all facts relating to the dispute have been brought forward. The Third Level Manager (or designee) and the Director of HR Operations, Employee Relations & HR Compliance (or delegate) will determine the resolution to the dispute and will provide a written response to the employee within 20 business days from submission of the Dispute Resolution Form. The Third Level Manager (or designee) or the Director of HR Operations, Employee Relations & HR Compliance (or delegate) must notify the employee if it is not possible for the written response to be given to the employee within the 20 business day time frame. This is the final level of appeal in the dispute resolution process.

### Employment Disputes Covered by Key's Open Door Policy
Disputes covered by the Open Door Policy include, but are not limited to:
- Involuntary separations such as discharges and layoffs including discharges based on violations of Key's Code of Ethics or other written policies.
- An employee whose position has been eliminated due to reorganization or reduction in staff may challenge his or her selection for separation, but may not utilize the Open Door Policy process to challenge the management decision regarding the necessity for the separation. (Employees who have executed an Employment Separation Agreement or a similar waiver of rights and the revocation period has expired, may not utilize this process.)
- Voluntary termination wherein the employee claims intolerable conditions forced his or her resignation.
- Claims of discrimination or harassment based on protected status under federal, state, or local law.
- Disagreement between employee and manager on employment decisions, Human Resource program eligibility, administration of the Performance Improvement Plan process, and compensation.

### Employment Disputes Not Covered by Key's Open Door Policy
- Disputes involving welfare benefit plans, deferred compensation, 401(k) or pension plans and other ERISA based benefit plans that provide for an internal plan appeal process which must be utilized to challenge decisions regarding such plans.
- Disputes regarding modification of any of Key's existing Human Resources policies or procedures (e.g., time off, salary administration, safety/security, Code of Ethics).
- Workers' compensation.
- Unemployment compensation.

### Non-Retaliation
Key is committed to resolving legitimate employee disputes quickly and reasonably. Key forbids any retaliation against any employee, who, in good faith, pursues resolution of an employee dispute under this policy.

### Confidentiality and Integrity of Procedures
All conversations that occur during any meeting arranged under these procedures are considered confidential; all documentation generated in connection with an issue or dispute under these procedures will also be considered confidential and will not be placed in the employee's employment file unless requested in writing by the employee or the dispute becomes external to Key in which case the information may be utilized in the external proceeding. Most importantly, Key is committed to supporting the integrity of these procedures and will ensure that they are maintained on a non-discriminatory and non-retaliatory basis.

*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".



Revised 120717
KeyCorp Internal

## OPEN DOOR POLICY

Key* has a long history of fostering a positive work environment that encourages open communications as a means of solving work related issues. If an employee has an issue or concern with any phase of the business operation, Key encourages the discussion of the issue between the employee and his or her immediate supervisor. If the employee chooses not to discuss the matter with his or her immediate supervisor, the employee is encouraged to contact his or her next level manager. Then, if the issue is still not resolved, the employee is encouraged to contact the ER Solutions Team at 1-888-KEYS2HR to help bring about a quick, confidential and informal resolution of the problem.

However, differences occasionally arise that cannot be resolved through informal methods of dispute resolution. In these rare instances, Key believes that such disputes can be best resolved through a formal internal dispute resolution process, which includes senior management review and resolution of the issue. Key's Open Door Policy provides a voluntary, quick, neutral and confidential process for employees to resolve employment related concerns. Key's Open Door Policy is a process that requires the employee to provide facts and details regarding their concerns and to complete each step prior to proceeding to the next step. The process ends when the employee initiating the review accepts the decision following Step One or when Step Two of the process is concluded.

### Process

Employees are encouraged to first discuss the issue with his or her immediate supervisor prior to initiating the formal process. There are two steps in the Open Door process.

Step One: If the employee's issue has not been resolved in his or her discussion with his or her manager, supervisor, higher level management, or the ER Solutions Team, the employee should submit his or her concerns using the Dispute Resolution Form which can be obtained by contacting the ER Solutions Team at 1-888-KEYS2HR. The completed form should be submitted to the ER Solutions Team via fax at 1-216-370-9260. Employees should include any supporting documentation if available, and facts and details sufficient that their claim can be investigated. The Open Door Dispute Resolution Request process cannot be conducted if this information is not provided.

All requests for review must be submitted in writing and must include the following information:
- A detailed description of the dispute including facts and details sufficient that their claim can be investigated;
- The steps taken to resolve the dispute prior to submitting an Open Door Dispute Resolution Request;
- The date the dispute arose;
- The desired outcome requested by the employee; and
- Additional information including the names of other employees who may have knowledge of the issue which may assist Key in resolving the dispute.

Employees are encouraged to initiate the formal dispute resolution process within 20 business days of the incident. An Employee Relations professional will be assigned to work with the Second Level Manager (i.e., the employee's manager's manager) through the process. Based on the Second Level Manager's prior involvement in concern or based on business needs, the Second Level Manager may designate another member of the group's leadership team to participate on his or her behalf. Upon receipt of the Dispute Resolution Form and during the process, the Second Level Manager (or designee) and Employee Relations professional will contact the employee to discuss the issue. If applicable, the Second Level Manager (or designee) and Employee Relations professional may contact other employees regarding the dispute.

At the conclusion of the discussion relating to the dispute, the parties agree that all facts relating to the dispute have been brought forward. The Second Level Manager (or designee) and the Employee Relations professional will determine the resolution to the dispute and will provide a written response to the employee within 20 business days from submission of the Dispute Resolution Form. The Second Level Manager (or designee) and Employee Relations professional must notify the employee if it is not possible for the written response to be given to the employee within the 20 business day time frame. If the employee is satisfied with the resolution, then the Open Door process is complete.

Step Two: If the employee's issue has not been resolved in Step One, he or she may resubmit the Dispute Resolution Form with a detailed explanation as to why he or she feels the issue was not resolved in Step One to the ER Solutions Team via fax to 1-216-370-9260. . In the Step Two request, the employee must include either information disputing the facts and considerations upon which the Step One decision was made causing the

*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".



employee not to agree with the decision. The Step Two process cannot be conducted if this information is not provided.

Employees should initiate the appeal process within 20 business days of receiving a response from Step One. Upon receipt of the Dispute Resolution Form and during the process, the Third Level Manager and the Director of HR Operations, Employee Relations & HR Compliance (or delegate as applicable) will contact the employee to discuss the issue if additional clarification is needed with details provided on the Dispute Resolution Form. Based on the Third Level Manager's prior involvement in concern or based on business needs, the Third Level Manager may designate another member of the group's leadership team to participate on his or her behalf. If applicable, the Third Level Manager (or designee) and the Director of HR Operations, Employee Relations & HR Compliance (or delegate) may contact other employees regarding the dispute as appropriate.

At the conclusion of the discussion relating to the dispute, the parties agree that all facts relating to the dispute have been brought forward. The Third Level Manager (or designee) and the Director of HR Operations, Employee Relations & HR Compliance (or delegate) will determine the resolution to the dispute and will provide a written response to the employee within 20 business days from submission of the Dispute Resolution Form. The Third Level Manager (or designee) or the Director of HR Operations, Employee Relations & HR Compliance (or delegate) must notify the employee if it is not possible for the written response to be given to the employee within the 20 business day time frame. This is the final level of appeal in the dispute resolution process.

**Employment Disputes Covered by Key's Open Door Policy**
Disputes covered by the Open Door Policy include, but are not limited to:
- Involuntary separations such as discharges and layoffs including discharges based on violations of Key's Code of Ethics or other written policies.
- An employee whose position has been eliminated due to reorganization or reduction in staff may challenge his or her selection for separation, but may not utilize the Open Door Policy process to challenge the management decision regarding the necessity for the separation. (Employees who have executed an Employment Separation Agreement or a similar waiver of rights and the revocation period has expired, may not utilize this process.)
- Voluntary termination wherein the employee claims intolerable conditions forced his or her resignation.
- Claims of discrimination or harassment based on protected status under federal, state, or local law.
- Disagreement between employee and manager on employment decisions, Human Resource program eligibility, administration of the Performance Improvement Plan process, and compensation.

**Employment Disputes Not Covered by Key's Open Door Policy**
- Disputes involving welfare benefit plans, deferred compensation, 401(k) or pension plans and other ERISA based benefit plans that provide for an internal plan appeal process which must be utilized to challenge decisions regarding such plans.
- Disputes regarding modification of any of Key's existing Human Resources policies or procedures (e.g., time off, salary administration, safety/security, Code of Ethics).
- Workers' compensation.
- Unemployment compensation.

**Non-Retaliation**
Key is committed to resolving legitimate employee disputes quickly and reasonably. Key forbids any retaliation against any employee, who, in good faith, pursues resolution of an employee dispute under this policy.

**Confidentiality and Integrity of Procedures**
All conversations that occur during any meeting arranged under these procedures are considered confidential; all documentation generated in connection with an issue or dispute under these procedures will also be considered confidential and will not be placed in the employee's employment file unless requested in writing by the employee or the dispute becomes external to Key in which case the information may be utilized in the external proceeding. Most importantly, Key is committed to supporting the integrity of these procedures and will ensure that they are maintained on a non-discriminatory and non-retaliatory basis.

*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".



Revised 080717
KeyCorp Internal

## Harassment Policy

Key* is committed to promoting a productive work environment in which every employee is treated with respect. The purpose of this policy is to prevent harassment of employees by supervisors, co-workers, and non-employees based on race; color; religion; gender; sexual orientation; actual or perceived gender-related expression, identity, mannerisms or other gender-related characteristics; national origin; citizenship status; marital status; age; mental or physical disability; veteran status; or any other characteristic protected by applicable law.

Harassment is defined as offensive or intimidating conduct of a verbal or physical nature, which has the purpose or effect of unreasonably interfering with an employee's working conditions or performance, creates a hostile, intimidating, or offensive work environment or otherwise adversely affects employment opportunities.

Sexual harassment is a particular type of harassment which is characterized by unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature where submission is a term or condition of employment; submission to or rejection of the conduct is a basis for an employment decision; or such conduct unreasonably interferes with an individual's work performance or creates a hostile work environment.

Examples of sexual or other harassment include, but are not limited to the following:

- derogatory jokes, expressions or comments of a sexual nature;
- derogatory jokes, expressions or comments involving race; color; religion; gender; sexual orientation; actual or perceived gender-related expression, identity, mannerisms or other gender-related characteristics; national origin; citizenship status; marital status; age; mental or physical disability; veteran status; or any other characteristic protected by applicable law;
- the display of graphics, cartoons, or objects of a sexual nature;
- the display of degrading graphics, cartoons, or objects involving race; color; religion; gender; sexual orientation; actual or perceived gender-related expression, identity, mannerisms or other gender-related characteristics; national origin; citizenship status; marital status; age; mental or physical disability; veteran status; or any other characteristic protected by applicable law;
- physical contact, flirtation, or advances of a sexual nature;
- statements or threats which imply a link between an employee's sexual conduct and his or her employment status, advancement potential, salary treatment, or other employment action; and
- basing an employment decision such as hiring, promotion, retention, or compensation on whether an employee or applicant submits to sexual advances.

It is the policy of Key not to tolerate verbal or physical conduct which harasses, disrupts, or interferes with another's work performance or which creates an intimidating, hostile, or offensive environment. Harassment based on race; color; religion; gender; sexual orientation; actual or perceived gender-related expression, identity, mannerisms or other gender-related characteristics; national origin; citizenship status; marital status; age; mental or physical disability; veteran status; or any other characteristic protected by applicable law will not be permitted whether it is by a supervisor, co-worker, customer, vendor, visitor, or consultant. Allegations of harassment will be investigated even if no formal complaint is filed or the complaining individual refuses to cooperate in an investigation. You are encouraged to report any harassment and are advised that no retaliation will occur for reporting the conduct.

A violation of the Harassment policy will lead to being placed on a Performance Improvement Plan which may include termination of employment. Employees filing knowingly false complaints will be placed on a Performance Improvement Plan which may include termination of employment.

### Procedure for Raising and Resolving Individual Complaints

If you are either a possible victim or a possible observer of harassment, you should report your concerns to your manager, so that he or she may work with the ER Solutions Team to address the issue. Alternatively, you may also choose to consult directly with the ER Solutions Team at 1-888-KEYS2HR. Investigations of complaints will be handled promptly and in as confidential a manner as possible. Potential witnesses, the alleged harasser, and the individual making the complaint will be contacted by Human Resources. All aspects of the investigation will be documented and, if harassment is established, appropriate action will be taken to end the harassment, aid the victim, and prevent its recurrence.

*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".



## Professional Conduct

Key* is committed to conducting business with the highest level of professionalism. Activities of Key employees must be above reproach. Conduct, which brings discredit to Key, is offensive to customers and/or employees, or is otherwise unprofessional, will not be tolerated. Such activity is prohibited and may result in immediate termination without further warning or recourse to the disciplinary procedures.

Conduct which is unprofessional includes but is not limited to the following:

- sexual, verbal or physical harassment of a co-worker, supervisor, or third party;
- engaging in or creating the potential perception of involvement in improper personal relationships with employees inside or outside the workplace which may, or potentially may appear to, disrupt the work unit, impair an individual's ability to effectively perform his or her duties, cause employee relations issues, or otherwise compromise the level of a person's professionalism in the workplace;
- unlawful conduct which occurs off premises or during non-working hours;
- interfering with the performance of other employees or supervisors;
- engaging or participating in any unlawful interruption of work;
- insubordination to a supervisor;
- neglecting job duties and responsibilities or refusing to perform assigned work;
- causing a substantial loss;
- absence from work without appropriate notice or supervisor approval;
- unless authorized by Key's Corporate Security, or permitted by state law, carrying, possessing, or using handguns, firearms, explosives, knives, or any other dangerous instrument or device on Key property, in Key vehicles, when engaged in Key business or at a Key sponsored event irrespective of whether you are licensed by law;
- possessing, selling, using or being under the influence of any illegal drug or controlled substance while on work premises or on work time;
- using or being under the influence of any intoxicating beverage while working or on company property without authorization;
- stealing, defalcation, theft, or other illegal acts;
- removing from Key premises any Key property, records or other materials without proper authorization;
- violating Key policies (for example, Code of Ethics, prohibitions against illegal drug and alcohol use);
- falsifying reports or records (for example, applications for employment, absences, illnesses and time sheets, expense reports, etc.);
- violating the confidentiality of customer or Key's records;
- using profane or abusive language;
- assaulting an employee, supervisor, or customer or other acts of violence;
- gambling on Key premises or while conducting Key's business;
- violation of Key computer security guidelines including the unauthorized use of any Key database;
- use of Key's property or customer information for personal benefit;
- verbal threats or abuse directed at an employee, supervisor, or customer;
- abusing Key accounts (for example, check kiting or floating, employees increasing their own credit limits or issuing their own loans); and
- knowing violation of any government rule, regulation, or law, applicable to Key.

This list of unprofessional conduct is not intended to be all inclusive. Key reserves the right to determine whether other conduct not listed above may warrant immediate termination.

{00350613 v1 CONFIDENT }*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".
Revised 021317
Key Internal



## Bond, Dishonesty and Breach of Trust

If an employee's coverage under Key's* bond is terminated or canceled, the employee, at the discretion of the Human Resources department, may be immediately suspended or terminated.

- Criminal Proceedings. If charged with or under investigation for any felony or misdemeanor, the employee, at the discretion of the Human Resources department, may be suspended without pay until the matter is resolved. The Human Resources department will determine whether the employee will be terminated or allowed to return to work after the matter has been resolved. If an employee is convicted of any felony or misdemeanor involving dishonesty, breach of trust, substance abuse or money laundering, the employee will be immediately terminated in accordance with the requirement of the Federal Deposit Insurance Act.

  If it is discovered that an employee has been convicted of a crime involving dishonesty, breach of trust, substance abuse or money laundering, or has failed to disclose a past conviction on an employment application, the employee will be immediately terminated or otherwise appropriately disciplined.

- Other Acts. If the employee violates a policy or procedure that is important to the effective operations of Key such as a violation of the Code of Ethics, breach of security procedures, disclosure of confidential information, harassment, self-dealing or other unprofessional conduct, the employee may, at the discretion of the Human Resources department, be immediately suspended with or without pay pending a final determination of the employee's employment status.

*KeyCorp, KeyBank and their affiliates or subsidiaries are referred to individually or collectively herein as "Key".

Revised 051911
Key Internal

# EXHIBIT C

 CFA Institute

# CODE OF ETHICS AND STANDARDS OF PROFESSIONAL CONDUCT

## PREAMBLE

The CFA Institute Code of Ethics and Standards of Professional Conduct are fundamental to the values of CFA Institute and essential to achieving its mission to lead the investment profession globally by promoting the highest standards of ethics, education, and professional excellence for the ultimate benefit of society. High ethical standards are critical to maintaining the public's trust in financial markets and in the investment profession. Since their creation in the 1960s, the Code and Standards have promoted the integrity of CFA Institute members and served as a model for measuring the ethics of investment professionals globally, regardless of job function, cultural differences, or local laws and regulations. All CFA Institute members (including holders of the Chartered Financial Analyst® [CFA®] designation) and CFA candidates must abide by the Code and Standards and are encouraged to notify their employer of this responsibility. Violations may result in disciplinary sanctions by CFA Institute. Sanctions can include revocation of membership, revocation of candidacy in the CFA Program, and revocation of the right to use the CFA designation.

## THE CODE OF ETHICS

Members of CFA Institute (including CFA charterholders) and candidates for the CFA designation ("Members and Candidates") must:

- Act with integrity, competence, diligence, respect and in an ethical manner with the public, clients, prospective clients, employers, employees, colleagues in the investment profession, and other participants in the global capital markets.
- Place the integrity of the investment profession and the interests of clients above their own personal interests.
- Use reasonable care and exercise independent professional judgment when conducting investment analysis, making investment recommendations, taking investment actions, and engaging in other professional activities.
- Practice and encourage others to practice in a professional and ethical manner that will reflect credit on themselves and the profession.
- Promote the integrity and viability of the global capital markets for the ultimate benefit of society.
- Maintain and improve their professional competence and strive to maintain and improve the competence of other investment professionals.

## STANDARDS OF PROFESSIONAL CONDUCT

### I. PROFESSIONALISM

**A. Knowledge of the Law.** Members and Candidates must understand and comply with all applicable laws, rules, and regulations (including the CFA Institute Code of Ethics and Standards of Professional Conduct) of any government, regulatory organization, licensing agency, or professional association governing their professional activities. In the event of conflict, Members and Candidates must comply with the more strict law, rule, or regulation. Members and Candidates must not knowingly participate or assist in and must dissociate from any violation of such laws, rules, or regulations.

**B. Independence and Objectivity.** Members and Candidates must use reasonable care and judgment to achieve and maintain independence and objectivity in their professional activities. Members and Candidates must not offer, solicit, or accept any gift, benefit, compensation, or consideration that reasonably could be expected to compromise their own or another's independence and objectivity.

**C. Misrepresentation.** Members and Candidates must not knowingly make any misrepresentations relating to investment analysis, recommendations, actions, or other professional activities.

**D. Misconduct.** Members and Candidates must not engage in any professional conduct involving dishonesty, fraud, or deceit or commit any act that reflects adversely on their professional reputation, integrity, or competence.

### II. INTEGRITY OF CAPITAL MARKETS

**A. Material Nonpublic Information.** Members and Candidates who possess material nonpublic information that could affect the value of an investment must not act or cause others to act on the information.

**B. Market Manipulation.** Members and Candidates must not engage in practices that distort prices or artificially inflate trading volume with the intent to mislead market participants.

© 2014 CFA Institute

## III. DUTIES TO CLIENTS

**A. Loyalty, Prudence, and Care.** Members and Candidates have a duty of loyalty to their clients and must act with reasonable care and exercise prudent judgment. Members and Candidates must act for the benefit of their clients and place their clients' interests before their employer's or their own interests.

**B. Fair Dealing.** Members and Candidates must deal fairly and objectively with all clients when providing investment analysis, making investment recommendations, taking investment action, or engaging in other professional activities.

**C. Suitability.**
1. When Members and Candidates are in an advisory relationship with a client, they must:
   a. Make a reasonable inquiry into a client's or prospective client's investment experience, risk and return objectives, and financial constraints prior to making any investment recommendation or taking investment action and must reassess and update this information regularly.
   b. Determine that an investment is suitable to the client's financial situation and consistent with the client's written objectives, mandates, and constraints before making an investment recommendation or taking investment action.
   c. Judge the suitability of investments in the context of the client's total portfolio.
2. When Members and Candidates are responsible for managing a portfolio to a specific mandate, strategy, or style, they must make only investment recommendations or take only investment actions that are consistent with the stated objectives and constraints of the portfolio.

**D. Performance Presentation.** When communicating investment performance information, Members and Candidates must make reasonable efforts to ensure that it is fair, accurate, and complete.

**E. Preservation of Confidentiality.** Members and Candidates must keep information about current, former, and prospective clients confidential unless:
1. The information concerns illegal activities on the part of the client or prospective client,
2. Disclosure is required by law, or
3. The client or prospective client permits disclosure of the information.

## IV. DUTIES TO EMPLOYERS

**A. Loyalty.** In matters related to their employment, Members and Candidates must act for the benefit of their employer and not deprive their employer of the advantage of their skills and abilities, divulge confidential information, or otherwise cause harm to their employer.

**B. Additional Compensation Arrangements.** Members and Candidates must not accept gifts, benefits, compensation, or consideration that competes with or might reasonably be expected to create a conflict of interest with their employer's interest unless they obtain written consent from all parties involved.

**C. Responsibilities of Supervisors.** Members and Candidates must make reasonable efforts to ensure that anyone subject to their supervision or authority complies with applicable laws, rules, regulations, and the Code and Standards.

## V. INVESTMENT ANALYSIS, RECOMMENDATIONS, AND ACTIONS

**A. Diligence and Reasonable Basis.** Members and Candidates must:
1. Exercise diligence, independence, and thoroughness in analyzing investments, making investment recommendations, and taking investment actions.
2. Have a reasonable and adequate basis, supported by appropriate research and investigation, for any investment analysis, recommendation, or action.

**B. Communication with Clients and Prospective Clients.** Members and Candidates must:
1. Disclose to clients and prospective clients the basic format and general principles of the investment processes they use to analyze investments, select securities, and construct portfolios and must promptly disclose any changes that might materially affect those processes.
2. Disclose to clients and prospective clients significant limitations and risks associated with the investment process.
3. Use reasonable judgment in identifying which factors are important to their investment analyses, recommendations, or actions and include those factors in communications with clients and prospective clients.
4. Distinguish between fact and opinion in the presentation of investment analysis and recommendations.

**C. Record Retention.** Members and Candidates must develop and maintain appropriate records to support their investment analyses, recommendations, actions, and other investment-related communications with clients and prospective clients.

## VI. CONFLICTS OF INTEREST

**A. Disclosure of Conflicts.** Members and Candidates must make full and fair disclosure of all matters that could reasonably be expected to impair their independence and objectivity or interfere with respective duties to their clients, prospective clients, and employer. Members and Candidates must ensure that such disclosures are prominent, are delivered in plain language, and communicate the relevant information effectively.

**B. Priority of Transactions.** Investment transactions for clients and employers must have priority over investment transactions in which a Member or Candidate is the beneficial owner.

**C. Referral Fees.** Members and Candidates must disclose to their employer, clients, and prospective clients, as appropriate, any compensation, consideration, or benefit received from or paid to others for the recommendation of products or services.

## VII. RESPONSIBILITIES AS A CFA INSTITUTE MEMBER OR CFA CANDIDATE

**A. Conduct as Participants in CFA Institute Programs.** Members and Candidates must not engage in any conduct that compromises the reputation or integrity of CFA Institute or the CFA designation or the integrity, validity, or security of the CFA Institute programs.

**B. Reference to CFA Institute, the CFA Designation, and the CFA Program.** When referring to CFA Institute, CFA Institute membership, the CFA designation, or candidacy in the CFA Program, Members and Candidates must not misrepresent or exaggerate the meaning or implications of membership in CFA Institute, holding the CFA designation, or candidacy in the CFA program.


CFA Institute